# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>ELECTION SYSTEMS AND SOFTWARE, INC.,<br><br>*Defendant.* | CASE NO.: 1:10-cv-00380<br><br>JUDGE: Bates, John D.<br><br>DECK TYPE: Antitrust<br><br>DATE STAMP: |

**FILED**

**JUN 3 0 2010**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## FINAL JUDGMENT

WHEREAS, Plaintiffs, the United States of America ("United States"), the States of

Arizona, Colorado, Florida, Maine, Maryland, New Mexico, Tennessee, and Washington, and the

Commonwealth of Massachusetts (the "Plaintiff States"), filed their Complaint on March 8,

2010; Plaintiffs and Defendant, Election Systems and Software, Inc., by their respective

attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any

issue of fact or law, and without this Final Judgment constituting any evidence against or

admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendant agrees to be bound by the provisions of this Final Judgment

pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain

divestiture of certain rights or assets by Defendant to restore competition;

AND WHEREAS, the United States requires Defendant to make certain divestitures for

the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendant has represented to the United States that the divestiture

required below can and will be made and that it will later raise no claim of hardship or difficulty

as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any

issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND

DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this

action. The Complaint states a claim upon which relief may be granted against Defendant under

Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. DEFINITIONS

As used in this Final Judgment:

A.      "Acquirer" means the entity to whom Defendant divests the Divestiture Assets.

B.      "ES&S" means Defendant, Election Systems & Software, Inc., a Delaware

corporation with its headquarters in Omaha, Nebraska, its successors and assigns, its subsidiaries,

including Premier Election Solutions, Inc. and PES Holdings, Inc., both Delaware corporations

(collectively, "Premier"), and its divisions, groups, affiliates, partnerships and joint ventures, and

their directors, officers, managers, agents, and employees.

C.      "Premier Voting Equipment System Products" means all versions, past, present,

and in development, of Premier hardware, software, and firmware used to record, tabulate,

transmit or report votes, including all such systems certified by federal certification authorities

(including, but not limited to the Assure 1.2 system that was certified by the United States

Election Assistance Commission on August 6, 2009), and all such systems certified by the

election authorities of any state.

    D.      "AutoMARK Products" means ES&S's ballot marking device that allows voters with disabilities to privately and independently mark a ballot.

    E.      "Divestiture Assets" means:

        (1)      all intangible assets related to the use, operation, certification, design, production, modification, enhancement, distribution, sale, repair or service of the Premier Voting Equipment System Products, including, but not limited to, intellectual property (including, but not limited to, patents, patent applications, licenses, sublicenses, copyrights, databases containing design information and, with respect to the Assure 1.2 suite of products only, trademarks, trade secrets, trade names, service marks, service names, slogans, domain names, logos and trade dress); the unregistered trademark "Premier"; data related to the use, operation, certification testing, internal testing, and beta testing; documentation of pending and current certification efforts with the United States Election Assistance Commission ("EAC") and the election authorities of any state; technical information, software, software source code and related documentation, know-how, drawings, blueprints, designs, design tools and simulation capability, and specifications for materials, parts, and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; all manuals, performance, financial, operational, and other records Defendant provides to its own employees, customers, suppliers, agents, dealers or licensees; and all available research data concerning historic and current research and development efforts relating to the Premier Voting Equipment System Products, including, but not limited to, designs of experiments and the results of successful and unsuccessful designs and experiments;

(2)     tangible assets, including:

(a)     all tooling and fixed assets owned by Defendant and used in connection with the manufacture, assembly, production, service and repair of the Premier Voting Equipment System Products, as detailed in Section 2.7 and Schedule 2.7(a) of the Purchase Agreement by and among ES&S, Diebold, Inc., Premier Election Solutions, Inc., PES Holdings, Inc., and Premier Election Solutions Canada ULC, dated September 2, 2009 ("Diebold Purchase Agreement").

(b)     inventory, parts and components for both the Premier Voting Equipment Products and the AutoMARK Products, including those that are not commercially available, sufficient for the Acquirer to assemble, manufacture, produce, service and repair the Premier Voting Equipment System Products and the AutoMARK Products.

(3)     a fully paid-up, non-exclusive, perpetual, transferable license to certify, produce, modify, enhance, distribute, sell, repair and service the AutoMARK Products. Such license shall include all intellectual property (including, but not limited to, patents, patent applications, licenses, sublicenses, copyrights, trademarks, trade names, trade secrets, service marks, service names, slogans, domain names, logos, and trade dress), data, drawings, ideas, concepts, know-how, procedures, processes, technical information, software, software source code and related documentation, blueprints, specifications, manuals, and any other intangible assets related to the use, operation, certification, production, modification, enhancement,

-4-

distribution, sale, repair or service of the AutoMARK Products.

## III. APPLICABILITY

A.    This Final Judgment applies to ES&S, as defined above, and all other persons in active concert or participation with it who receive actual notice of this Final Judgment by personal service or otherwise.

B.    If, prior to complying with Section IV and V of this Final Judgment, Defendant sells or otherwise disposes of all or substantially all of its assets or of lesser business units that include the Divestiture Assets, it shall require the purchaser to be bound by the provisions of this Final Judgment. Defendant need not obtain such an agreement from the Acquirer of the assets divested pursuant to this Final Judgment.

## IV. DIVESTITURE

A.    Defendant is ordered and directed, within sixty (60) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion, after consultation with the Plaintiff States. The United States, in its sole discretion, after consultation with the Plaintiff States, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances. Defendant agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible.

B.    In accomplishing the divestiture ordered by this Final Judgment, Defendant promptly shall make known, by usual and customary means, the availability of the Divestiture

Assets. Defendant shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendant shall offer to furnish to any prospective Acquirer, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process, except such information or documents subject to the attorney-client privilege or work-product doctrine. Defendant shall make available such information to the United States at the same time that such information is made available to any other person.

C.      Defendant shall provide the Acquirer and the United States information relating to its current and former employees involved in the use, operation, certification, design, production, modification, enhancement, distribution, sale, repair or service of the Premier Voting Equipment System Products and/or Premier's use of the AutoMARK Products to enable the Acquirer to make offers of employment to such personnel. Defendant shall not interfere with any negotiations by the Acquirer to employ any such employee whose primary responsibility is the use, operation, certification, design, production, modification, enhancement, distribution, sale, repair or service of the Premier Voting Equipment System Products and/or Premier's use of the AutoMARK Products.

D.      Defendant shall waive all nondisclosure and noncompete agreements for all of the current and former employees of Premier for a period of six (6) months following the date of the divestiture of the Divestiture Assets, for the exclusive purpose of allowing those employees to seek employment with the Acquirer.

E.      Defendant shall permit any prospective Acquirer of the Divestiture Assets to have

reasonable access to personnel involved in the use, operation, certification, design, production, modification, enhancement, distribution, sale, repair or service of the Premier Voting Equipment System Products and/or the AutoMARK Products, and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F.      At the option of the Acquirer, Defendant shall enter into a contract for the purchase of additional parts and inventory for up to two (2) years sufficient to meet the Acquirer's needs to assemble, manufacture, produce, service or repair the Premier Voting Equipment System Products.   The terms and conditions of any sale or contractual arrangement intended to satisfy this provision must be commercially reasonable.

G.      In addition, Defendant shall provide any Acquirer of the Divestiture Assets information relating to suppliers of parts and components used for the assembly, manufacture, production, repair or service of the Premier Voting Equipment System Products and the AutoMARK Products.  Defendant shall not interfere with the Acquirer's ability to contract for the supply of parts or components from any vendor.

H.      Defendant shall immediately provide any Acquirer with a list of all current and former customers for the Premier Voting Equipment System Products.

I.      To the extent that current Premier contracts prevent Premier customers from selecting the Acquirer as its provider of equipment or services related to the Premier Voting Equipment System Products, the Defendant agrees to waive any such contractual impediment at the option of the customer.

J.     At the option of the Acquirer, Defendant shall enter into a transition services agreement sufficient to meet the Acquirer's needs for assistance in the use, operation, certification, design, production, modification, enhancement, distribution, sale, repair or service of the Premier Voting Equipment System Products and/or the AutoMARK Products for a period of up to six (6) months. The terms and conditions of any contractual arrangement intended to satisfy this provision must be commercially reasonable.

K.     On the date of the sale of the Divestiture Assets, Defendant shall provide Acquirer with copies of contracts with all current and former customers for any of the Premier Voting Equipment System Products.

L.     The Acquirer shall grant Defendant a non-exclusive license to use the Premier Voting Equipment System Products and the assets described in II(E)(2)(A), but Defendant may not use such a license to attempt to compete for any opportunity to sell or lease Premier Voting Equipment System Products contained within a Request for Proposal (or RFP) or a Request for Quote (or RFQ) for a voting equipment system, or any upgrade, request or order that calls for replacement of 50 percent or more of a customer's installed voting equipment, other than in the case of a *force majeure* event (i.e., Act of God, fire, earthquake, flood, explosion, war, or terrorist act), or to the extent the Defendant is obligated under a contract with a Premier or Diebold customer in existence at the time of Closing, or to the extent that the Defendant is obligated under a settlement agreement formed by Diebold pursuant to Section 4.2(d) of the Diebold Purchase Agreement. Subject to the limitations described in Section IV, Defendant may use the license described in this paragraph to provide equipment and services to current customers.

-8-

M. Any improvement or modification to the Divestiture Assets developed by either Defendant or the Acquirer shall be owned solely by the developing party.

N. Defendant shall not take any action that will impede in any way the operation or divestiture of the Divestiture Assets.

O. Unless the United States, in its sole discretion, after consultation with the Plaintiff States, otherwise consents in writing, the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with the Plaintiff States, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business that is engaged in the provision of voting equipment systems and services. The divestiture, whether pursuant to Section IV or Section V of this Final Judgment:

(1) shall be made to an Acquirer that, in the United State's sole judgment, after consultation with the Plaintiff States, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the provision of voting equipment systems and services; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion, after consultation with the Plaintiff States, that none of the terms of any agreement between an Acquirer and Defendant gives Defendant the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

# V. APPOINTMENT OF TRUSTEE

A.      If Defendant has not divested the Divestiture Assets within the time period specified in Section IV(A), it shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, in its sole discretion, after consultation with the Plaintiff States, at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendant any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.      Defendant shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by Defendant must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.      The trustee shall serve at the cost and expense of Defendant, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals

-10-

and agents retained by the trustee, all remaining money shall be paid to Defendant and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E. Defendant shall use its best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Defendant shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendant shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F. After its appointment, the trustee shall file monthly reports with the United States, the Plaintiff States, and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.    If the trustee has not accomplished the divestiture ordered under this Final

Judgment within six (6) months after its appointment, the trustee shall promptly file with the

Court a report setting forth:  (1) the trustee's efforts to accomplish the required divestiture; (2)

the reasons, in the trustee's judgment, why the required divestiture has not been accomplished;

and (3) the trustee's recommendations.  To the extent such reports contain information that the

trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The

trustee shall at the same time furnish such report to the United States and the Plaintiff States,

which shall have the right to make additional recommendations consistent with the purpose of

the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the

purpose of the Final Judgment, which may, if necessary, include extending the trust and the term

of the trustee's appointment by a period requested by the United States.

## VI.  <u>NOTICE OF PROPOSED DIVESTITURE</u>

A.    Within two (2) business days following execution of a definitive divestiture

agreement, Defendant shall notify the United States, and the Plaintiff States, of any proposed

divestiture required by Section IV of this Final Judgment.  Within two (2) business days

following execution of a definitive divestiture agreement, the trustee shall notify the United

States of any proposed divestiture required by Section V of this Final Judgment.  The notice shall

set forth the details of the proposed divestiture and list the name, address, and telephone number

of each person not previously identified who offered or expressed an interest in or desire to

acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.    Within fifteen (15) calendar days of receipt by the United States and the Plaintiff

States of such notice, the United States and any Plaintiff State may request from Defendant, the

proposed Acquirer, any other third party, or the trustee if applicable, additional information

concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer.

Defendant and the trustee shall furnish any additional information requested within fifteen (15)

calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20)

calendar days after the United States has been provided the additional information requested

from Defendant, the proposed Acquirer, any third party, and the trustee, whichever is later, the

United States, in its sole discretion, after consultation with the Plaintiff States, shall provide

written notice to Defendant and the trustee, if there is one, stating whether or not it objects to the

proposed divestiture. If the United States, after consultation with the Plaintiff States, provides

written notice that it does not object, the divestiture may be consummated, subject only to

Defendant's limited right to object to the sale under Section V(C) of this Final Judgment. Absent

written notice that the United States does not object to the proposed Acquirer or upon objection

by the United States, a divestiture proposed under Section IV or Section V shall not be

consummated. Upon objection by Defendant under Section V(C), a divestiture proposed under

Section V shall not be consummated unless approved by the Court.

## VII.  <u>FINANCING</u>

Defendant shall not finance all or any part of any purchase made pursuant to Section IV

or V of this Final Judgment.

## VIII.  <u>ASSET PRESERVATION</u>

Until the divestiture required by this Final Judgment has been accomplished, Defendant

shall take all steps necessary to comply with the Asset Preservation Stipulation and Order entered

by this Court. Defendant shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. AFFIDAVITS

A.    Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, Defendant shall deliver to the United States, the Plaintiff States, an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendant have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States, after consultation with the Plaintiff States, to information provided by Defendant, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.    Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendant shall deliver to the United States an affidavit that describes in reasonable detail all actions it has taken and all steps Defendant has implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendant shall deliver to the United States, the Plaintiff

States, an affidavit describing any changes to the efforts and actions outlined in Defendant's earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C. Defendant shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. COMPLIANCE INSPECTION

A. For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice Antitrust Division ("Antitrust Division"), including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendant, be permitted:

(1) access during Defendant's office hours to inspect and copy, or at the option of the United States, to require Defendant to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendant, relating to any matters contained in this Final Judgment; and

(2) to interview, either informally or on the record, Defendant's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant.

B. Upon the written request of an authorized representative of the Assistant Attorney

General in charge of the Antitrust Division, Defendant shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, or to the Attorneys General of any of the Plaintiff States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    If at the time information or documents are furnished by Defendant to the United States, Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendant ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. NOTIFICATION

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Defendant, without providing advance notification to the Antitrust Division, the Plaintiff States, shall not directly or indirectly acquire any assets of or any interest (including, but not limited to, any financial, security, loan, equity, or management

interest) in any entity engaged in the provision of voting equipment systems and services in the United States during the term of this Final Judgment.

Such notification shall be provided to the Antitrust Division, the Plaintiff States, in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 9 of the instructions must be provided only about voting equipment systems and services. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If, within the 30-day period after notification, representatives of the Antitrust Division make a written request for additional information, Defendant shall not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

## XII. NO REACQUISITION

Defendant may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XIII. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XV. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _June 30, 2010_

Court approval subject to procedures
of Antitrust Procedures and Penalties
Act, 15 U.S.C. § 16

_____
United States District Judge

-18-